[Cite as *State v. Wood*, 2012-Ohio-1780.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                        :            C.A. CASE NO.    24749

v.                                               :            T.C. NO.    11CR429

DONALD G. WOOD                                   :            (Criminal appeal from
                                        Common Pleas Court)

    Defendant-Appellant                      :

                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____20th____ day of ____April____, 2012.

. . . . . . . . . .

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

BYRON K. SHAW, Atty. Reg. No. 0073124, 4800 Belmont Place, Huber Heights, Ohio 45424
      Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}    Donald Wood was found guilty by a jury of one count of burglary in violation of R.C. 2911.12(A)(3), and was sentenced to community control sanctions for a

period not to exceed five years.[1]   He appeals from his conviction.

{¶ 2}    Wood was arrested on February 4, 2011, on suspicion of the burglary of a house on Claybeck Drive in Huber Heights earlier that day.  Wood was later indicted for burglary,[2] and the case was tried to a jury.

{¶ 3}    The State presented testimony from several neighbors of the burglarized house, the officers who investigated the crime, and the officers who arrested and interviewed Wood.  After the State's evidence was presented, Wood made a Crim.R. 29(A) motion for acquittal, which was overruled.  The defense did not call any witnesses.  The jury found Wood guilty of burglary, and he was sentenced as described above.

{¶ 4}    Wood raises one assignment of error on appeal, which states:

APPELLANT'S CONVICTION AND SENTENCING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 5}    Wood claims that his conviction was against the manifest weight of the evidence because none of the State's witnesses "could identify [him] as being the person they saw" near the scene of the burglary.  The State responds that this argument – that the State failed to identify him as the person who committed the burglary – actually challenges the sufficiency of the evidence, rather than its weight, and that the argument is without merit.

{¶ 6}    An argument based on the sufficiency of the evidence challenges whether the State presented adequate evidence on each element of the offense to allow the case to go

[1] Wood's brief erroneously states that the sentence for the burglary was ninety days in jail and five years of community control.   Although a jail sentence was imposed at the same hearing, it related to a probation violation in Case No. 2008CR3991.

[2] Wood's brief alleges that Wood was indicted on an additional count, "Criminal Tools," which was later dismissed.

to the jury or to sustain the verdict as a matter of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1999). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 7}     "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12.  When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*  at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 44.

{¶ 8}     Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses.  *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).  However, we may determine which of several competing inferences suggested by the evidence should be preferred.  *Id.*

---

The record reflects neither an indictment for nor a dismissal of a count of criminal tools.

{¶ 9}   The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 10}   The parties did not dispute that the house of Donald Barnes on Claybeck Drive was burglarized on the afternoon of February 4, 2011. At trial, the State presented testimony from several neighbors.

{¶ 11}   Linda Roberts testified that, when she came home from work around 2:00 p.m., she saw a full-sized van in front of her driveway with two occupants; one was a large, African-American man and the other was a woman. The man walked away from the passenger side of the van with a shovel, then rang Barnes's doorbell. Roberts testified that Wood was the man she had seen that day.

{¶ 12}   Dan Haliburnt and his wife, Victoria Haliburnt, also lived on Claybeck. Mr. Haliburnt testified that, on the afternoon of February 4, 2011, he saw a full-sized, blue and silver Econoline van parked near his house. A large African-American man got out of the van wearing a dark burgundy hoodie sweatshirt and carrying a snow shovel; the man walked toward Barnes's house. Mr. Haliburnt also saw a woman inside the van; she never left the van, but she did switch from the front passenger's seat to the driver's seat after the man exited the van. The woman left in the van after fifteen to twenty minutes. A few minutes later, Mrs. Hailburnt arrived home and stated to her husband that she thought she "saw someone breaking into [Barnes's] house." Mr. Haliburnt then saw that the Econoline van was parked in Barnes's driveway with the back doors open.

{¶ 13}   Mrs. Haliburnt testified that she saw a big van in Barnes's driveway when she came home from picking up her grandchildren from school on the afternoon of February 4, 2011.   She also saw a large man in a maroon hoodie with his back to the street holding a large, rectangular, heavy object that reflected light; the man appeared to be struggling a little to carry the object.   Mrs. Hailburnt wrote down the license plate of the van and saw the man put the rectangular object inside the van before driving away.   She did not see the man's face.

{¶ 14}   Huber Heights Police Officer Bryan Doyle testified that, when he responded to a call of a suspected burglary on Claybeck Drive on February 4, 2011, he saw that the back door of Barnes's house was standing open.   He also observed distinctive footprints with a circular pattern in the treads in the snow on the front sidewalk and leading around the corner of the house to the rear.   Barnes and the officers ascertained that a flat-screen television was missing from a bedroom of the house.

{¶ 15}   Detective Mike Noll of the Huber Heights police department responded to Claybeck Drive on the afternoon of February 4, on a call of a suspected burglary.   He testified that there was some confusion about the address at which the burglary had allegedly occurred, because the license plate that had been given to the officers was registered to a woman who lived at an address on Claybeck.   Detective Noll first responded to the house of the suspect vehicle (the van).   There, he made contact with the owner of the van, who stated that her daughter, Brianna Seers, was out in the van and had been "living on and off" with someone on Harshmanville Road "south of Kittredge, south of Powell."   A young man at the home, who stated that he was Seers's brother, told Noll that his sister (Seers) was out

with Donald Wood, who was "a black male." The young man called Seers and told her that the police were at their mother's house, but she hung up on him; police officers also talked with Seers by phone while they were at her mother's house, but they were unsuccessful in getting her to come there. Noll concluded that the "vehicle license plate, the vehicle description, the description of the two people seen, everything matched."

{¶ 16} Detective Noll testified that he was familiar with the house on Harshmanville Road described by Seers's mother. When Seers refused to come to her mother's house, Noll proceeded to the house on Harshmanville, made contact with the owner of that house, and waited for the van. He observed shoeprints matching those at Barnes's house in the snow outside the Harshmanville house.

{¶ 17} A van matching the description of the van seen on Claybeck and with the reported license plate number arrived at the Harshmanville house about one hour after Detective Noll's contact with Seers's mother. Seers, Wood, and another man who lived at the Harshmanville house were inside the vehicle. Wood and Seers were arrested. Noll testified that the officers conducted an inventory of the van; inside, they found two snow shovels, a large flat-screen television, garden gloves, and clothing that matched the description of what the burglar had been wearing on Claybeck. Noll observed that Seers was wearing shoes with a circular tread, but they were not the same size as the prints at Barnes's house. Wood was wearing shoes that were "bone dry" and looked "like they'd come out of a closet or out of a box." Noll found the condition of Wood's shoes "unusual," given the snow on the ground outside. The television in the van was not Barnes's television.

**{¶ 18}** Wood was interviewed by Detective Gephardt of the Huber Heights police department, and a video showing portions of this interview was played for the jury by agreement of the parties. In the video, Wood stated that he had been going door to door offering to shovel driveways on Claybeck earlier that day, but he denied taking a television. He stated, "it's all a misunderstanding."

**{¶ 19}** The State's evidence included eyewitness identification of Wood and of Seers's van, a neighbor's testimony that the van was parked in Barnes's driveway around the time of the burglary and that a large, reflective rectangular object was loaded into the back of the van, and a detective's testimony linking the van identified by the neighbors to Wood's girlfriend, who was in possession of the van at the time of the offense. The State's evidence further established that Wood was found in possession of clothing that matched the description of the suspected burglar, along with a snow shovel, gloves, and a large television (albeit not Barnes's television). Although much of this evidence was circumstantial, a jury may view circumstantial evidence as having the same probative value as direct evidence. *State v. Baird*, 8th Dist. Cuyahoga No. 96352, 2011-Ohio-6268, ¶ 23, citing *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. This evidence was sufficient to support the jury's verdict, and the verdict was not against the manifest weight of the evidence.

**{¶ 20}** Wood's assignment of error is overruled.

**{¶ 21}** The judgment of the trial court will be affirmed.

. . . . . . . . . .

HALL, J. and FISCHER, J., concur.

(Hon. Patrick F. Fischer, First District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Michele D. Phipps
Byron K. Shaw
Hon. Frances E. McGee